# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

MARIE E. VALDEZ,

      Plaintiff,

vs.                                                    Civil No. 00-552 JP/WWD

WILLIAM A. HALTER, ACTING
COMMISSIONER OF SOCIAL SECURITY,[1]

      Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION
### Proposed Findings

    1. This matter comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing, filed September 11, 2000 **[docket # 9]**.[2] The Commissioner denied Plaintiff's request for Social Security Disability Insurance and Supplemental Security Income benefits. Plaintiff, currently age 47, alleges a disability which commenced September 9, 1997, due to fibromyalgia, diverticulitis and depression.

    2. The Administrative Law Judge ("ALJ") found that Ms. Valdez can perform sedentary work and that she can either return to her past relevant work as a mental health and alcohol

---

[1] William A. Halter became the Acting Commissioner of Social Security on January 20, 2001. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, William A. Halter should be substituted for Kenneth S. Apfel as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The motion package was actually filed with the Court on November 9, 2000, although the motion was served earlier.

treatment counselor, or that she can perform other jobs in the economy.  The Appeals Council denied Ms. Valdez' request for review of the ALJ's decision, thus the ALJ's decision is the final decision of the Commissioner.  Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).  Plaintiff's other past relevant work was as a secretary and waitress, and also at a bank.

   3. The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence.  Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests.  Id. (citation omitted).

   4. Plaintiff raises the following allegations of error with respect to the ALJ's decision: (1) the ALJ's finding that the diagnosis of fibromyalgia is undermined by the dearth of medical records is contrary to law; (2) the ALJ's failure to accord controlling weight to the opinions of the treating physicians is not supported by substantial evidence and is contrary to law; and (3) that it was legal error for the ALJ to rely on Plaintiff's ability to work during times that she alleged to have been suffering from the impairments as evidence of non-disability.

   5. "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity."  Thompson at 1486 (citing 42 U.S.C. §423 (d)(1)(A) & 42 U.S.C. § 1382c(a)(3)(A)).  Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications.  Id.; see 20 C.F.R. §§ 404.1520(a - f); 416.920.  The sequential evaluation process ends if at any

step the Commissioner finds that the claimant is disabled or not disabled.  <u>Id</u>. (citations omitted).

  6. Plaintiff worked for 20 years as a mental health and substance abuse counselor.  Ms. Valdez stated at the hearing that she first had symptoms from fibromyalgia about 22 years prior to the hearing.  <u>Tr. at 173</u>.  She complains of being in pain 24 hours a day, mostly on the left side, all the way down to her hip and causing cramps in both legs.  <u>Tr. at 177-78</u>.  Plaintiff said that she is unsteady on her feet, and bumps into objects and falls.   She states that the only time she feels better is when sleeping, but that she doesn't sleep for very long.  <u>Tr. at 178</u>.  Ms. Valdez also gets migraine headaches which are treated with Percocet or with injections at the emergency room.  <u>Tr. at 184</u>.

  7. Ms. Valdez told the ALJ that the steroid injections she was given for the fibromyalgia did not help.  <u>Tr. at 179</u>.  At the time of the hearing, she was on the following medications: Elavil, Percocet, Daypro (antiinflammatory), Quinine, Valium, Augmentin, Promethazine, Pepsid and Fibercon.  <u>Tr. at 181-82</u>.

  8. Plaintiff lives with her mother.  <u>Tr. at 188</u>.  She told the ALJ she takes two to five naps during the day, her first one after breakfast.  <u>Tr. at 178</u>.  She helps her mother with laundry, but doesn't bake or cook.  <u>Tr. at 184-85</u>.   She reads some, but has a hard time concentrating.  She cannot sit, stand or walk for long periods of time and is afraid to drive.  <u>Tr. at 174, 186</u>.

  9. Ms. Valdez stated that her symptoms became exacerbated in early September 1997 when her treating physician Dr. Elliott had her hospitalized at St. Vincent's Hospital.  Around the same time, her 20-year marriage failed.  She received counseling for depression and anxiety, but was not seeing a counselor at the time of the hearing.  <u>Tr. at 180, 184</u>.

**First Alleged Error**

10. Plaintiff alleges that the ALJ's finding that the diagnosis of fibromyalgia is undermined by the dearth of medical records is contrary to law. The ALJ found that Ms. Valdez' "complaints [of fibromyalgia] are not all reflected in the progress notes of her treating physicians." Tr. at 13.

11. As Plaintiff points out, there are no objective medical tests to support a diagnosis of fibromyalgia . See Preston v. Secretary of Health & Human Services, 854 F.2d 815, 818 (6th Cir.1988) ("unlike most diseases that can be confirmed or diagnosed by objective medical tests, fibrositis can only be diagnosed by elimination of other medical conditions which may manifest fibrositis-like symptoms of musculoskeletal pain, stiffness, and fatigue").

12. The symptoms of fibromyalgia are subjective, but it is nevertheless characterized by "pain all over, fatigue, disturbed sleep, stiffness, and . . . multiple tender spots . . . on the body." Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir.1996). The medical reports indicate that Plaintiff did not describe a textbook case of fibromyalgia, but she did report abdominal pain and colonic symptoms which are normally associated with the condition.

13. In her history and physical during her September 1997 hospital stay at St. Vincent's, Plaintiff was assessed as having a "history of increasing left-sided abdominal pain," which was diagnosed as diverticulitis as "the most likely thing." Other than scattered sigmoid diverticula found in the sigmoid colon, Tr. at 101, no sigmoid diverticulitis or other abnormalities were seen, Tr. at 103-04  in colonoscopy.

14. In September 1997, Plaintiff's presenting symptoms on a visit to Dr. Elliott were left-sided abdominal pain and loose, watery stools. Dr. Elliott diagnosed Plaintiff with chronic fibromyalgia and colonic diverticulitis. Tr. at 118. Dr. Elliott noted that before her referral to

Dr. Dooley at St. Vincent's, Plaintiff had worked in the morning but had to come in because of severe pain and that she was "very discouraged [and] wants to die because she is tired of chronic pain." Tr. at 119. Plaintiff's physical examination at St. Vincent's on September 4, 1997 was otherwise unremarkable, but the report noted a past medical history of fibromyalgia. Tr. at 108. At a follow-up visit to her hospital stay in September 1997, Dr. Elliott's diagnosis was diverticulitis and chronic fibromyalgia. Tr. at 118.

    15. Dr. Dooley's note of September 10, 1997 did not contain any reservations about a diagnosis of fibromyalgia -- it mentioned Ms. Valdez' "severe problems with diverticulitis and diverticulosis" and also acknowledged "her problems with fibromyalgia." Tr. at 163.

    16. Dr. Steinberg saw Ms. Valdez twice in July 1998 and in August 1998, and on exam in October 1998 found no "clear trigger points." Tr. at 13. His assessment included chronic abdominal pain, irritable bowel syndrome, and "minimal" diverticulosis. Tr. at 134. In a note dated March 24, 1999 in which Dr. Steinberg stated that Ms. Valdez should be considered disabled, he noted that she has had "disabling fibromyalgia for a number of years." Tr. at 158.

    17. Early in the hearing, the ALJ commented that diverticulitis, or inflammation of the intestines, is commonly associated with the clinical picture of fibromyalgia. Tr. at 168.[3] At the same time, the ALJ noted that Plaintiff reported a history of fibromyalgia to her physicians, but only in one instance "actually described symptoms of this condition" Tr. at 13 during her October 30, 1998 visit to Dr. Steinberg. However, I note that on September 15, 1997, she reported to Dr. Elliott that she continued to have "lots of pain on the left side of her body over the shoulder, chest, and left side of her abdomen." Tr. at 118.

---

    [3] As Plaintiff notes, fibromyalgia can include irritable bowel symptoms. Mem. at 5.

18. The ALJ's description of the disease as benign is not altogether incorrect, since the severity in most people is not of a disabling degree.  See Sarchet at 307.  His observation is more relevant to the severity of Ms. Valdez' condition rather than whether or not she has fibromyalgia, given that the record contains ample evidence that she has this condition.  Thus, I find that the ALJ erred as to his findings regarding whether Ms. Valdez suffers from fibromyalgia.  The error is *de minimis* in light of the fact that the ALJ's findings as to the severity of Plaintiff's symptoms are based on a correct legal standard and sufficient evidence from the record.

**Second Alleged Error**

19. Plaintiff alleges that the ALJ's failure to accord controlling weight to the opinions of the treating physicians is not supported by substantial evidence and is contrary to law.  However, with the exception of two notes that were not before the ALJ at the time the decision was made, I find that the ALJ did not err in not according some of the medical opinions full weight.

20. In September 1997, Drs. Dooley and Elliott wrote notes in which they stated that Plaintiff was unable to work.  Tr. at 116, 118, 122.  After the ALJ entered an adverse decision, Dr. Steinberg also wrote a "To Whom It May Concern" note stating that Ms. Valdez "should be considered disabled for employment purposes" due to fibromyalgia and severe depression.  Tr. at 158.  Also following the ALJ's decision, in which the ALJ found there was insufficient evidence in the record to support a mental impairment, Plaintiff sought out psychological counseling from a licensed social worker, Helen Visarraga.  Tr. at 155.[4]  Ms. Visarraga also opined that Plaintiff "is not able to function in a work environment. . . ."  Id.

---

[4] Both Dr. Steinberg's note and Ms. Visarraga's assessment were included in exhibits submitted to the Appeals Council, Tr. at 7, and are therefore considered part of the record for this review.  See O'Dell v. Shalala, 44 F.3d 855, 859 (10th Cir. 1994).

21. The Commissioner, and not the physician, is responsible for examining medical source opinions and making the determination on whether a claimant meets the statutory definition of disability. See 20 C.F.R. § 404.1527(e)(1) Castellano v. Sec'y of HHS, 26 F.3d 1027, 1029 (10th Cir. 1994); SSR 96-5P.

22. The ALJ reviewed the available medical evidence which existed in the record apart from the notes which stated that Plaintiff was unable to work. Tr. at 13-15. I find that the ALJ did not err in discounting these notes based on the medical evidence, particularly where, as here, such evidence is internally inconsistent with the statements of disability in the doctors' notes. See Goatcher v. Dep't of Health & Hum. Serv., 52 F.3d 288, 290 (10th Cir. 1995) (opinion of a treating physician will be accorded little weight when it is internally inconsistent).

23. In September 1997, Plaintiff presented to Dr. Elliott feeling dry, dehydrated and feverish, and with abdominal pain which was noted occurred on an "episodic basis." Tr. at 108. Dr. Elliott referred her for in-patient treatment at St. Vincent's in early September 1997. The doctor also noted on September 15, 1997 during a follow-up to the hospitalization, that Plaintiff continued to have "lots of pain," but that it had improved from the last visit. Less than two weeks after this (and ten days after filing an application for disability benefits), Plaintiff took off on a Caribbean cruise, during which she seen once by the ship's doctor for a migraine. Tr. at 110.

24. Plaintiff objects to the Commissioner's mention of this cruise because a claimant should not be expected to "vegetate in a dark room." (citing Smith v. Califano, 637 F.2d 968, 971 (3d Cir. 1981)). At the same time, the Commissioner --and thus, the ALJ -- was justified in considering the fact and timing of the cruise in assessing the severity of Plaintiff's symptoms, as part of the entire record. Tr. at 16; SSR 96-7p (regulations require that the adjudicator consider

"the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record."[5]

25. Dr. Dooley's report stated that Plaintiff still complained of left-sided abdominal pain, but "over all appears to be reasonably stable." Tr. at 115. During her hospital stay, he noted symptoms of "increasing left-sided abdominal pain, associated with fever and diarrhea." Tr. at 109.

26. Dr. Steinberg's medical report indicated findings of "minimal diverticulosis." Tr. at 159. Dr. Steinberg did mention Plaintiff's alleged mental impairment, reflecting what Plaintiff told him regarding "multiple major stressors" over the past several months: a divorce from her husband, leaving home because of her husband's "aggressive sexual behavior," loss of her job, and feeling like her children (who lived away from home), have run away from her. Id. These medical opinions are inconsistent with the conclusory opinion that Plaintiff was unable to work.

27. Finally, Ms. Visarraga's report from a psychiatric assessment indicates that Plaintiff had been suffering for "over a year" from depression, that she was going through a divorce from an abusive husband and that she was having difficulty functioning at home. Tr. at 156.

28. Because the record is otherwise lacking in evidence that supports a mental impairment that would pose significant limitations on Ms. Valdez' ability to work, and because

---

[5] The ALJ's credibility analysis is not specifically challenged on appeal. However, the ALJ noted that Ms. Valdez has a "tendency to exaggerate the intensity, persistence, and frequency" of her symptoms. Tr. at 19. Such subjective measures of credibility are peculiarly within the judgment of the ALJ to decide. See Thompson, 987 F.2d at 1489 (quoting Hargis v. Sullivan, 945 F.2d 1482, 1489 (10th Cir.1991).

Ms. Visarraga's counseling and report was sought out only after the adverse disability determination was made, the ALJ did not err by discounting the opinion of Ms. Visarraga. See Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995) (weight of evidence that was obtained solely to aid plaintiff in her pursuit of disability benefits was extremely low); see also Grubb v. Apfel, 21 F.Supp. 2d 1236 (D.Kan. 1998) (ALJ declined to give doctor's opinion controlling weight where claimant was referred to consulting doctor by her attorney in connection with her application for disability benefits, that she did not go to him on her own for treatment, nor was she referred for treatment by a medical professional, and that doctor saw claimant no more than three times and did no more than make a diagnosis).

29. Dr. Steinberg also mentioned Plaintiff's depression in his treatment notes, e.g., in August 1998 he observed that Plaintiff was "tearful with a markedly depressed affect," due to her pending divorce and children moving away. But Dr. Steinberg's notation (written subsequent to the ALJ's decision), which indicates that Plaintiff had been "under medical and psychiatric care" for chronic depression, is not substantiated by any of the medical records. Tr. at 159. Although Dr. Steinberg stated that Plaintiff had "apparently made some contact with Mental Health Center for counseling," there are no records to document this contact. Thus, the ALJ's decision regarding Plaintiff's mental impairment should stand.

**Third Alleged Error**

30. Plaintiff alleges that it was legal error for the ALJ to rely on her ability to work during times that she alleged to have been suffering from the impairments as evidence of non-disability.

31. Contrary to Plaintiff's position, the ALJ did not rely on Plaintiff's ability to work, but

rather noted inconsistencies between Plaintiff's ability to work for 15 to 20 years prior to her disability onset date, and her sudden inability to work because of the same condition.  Tr. at 13. Even given that September 1997 marked a flare-up of the fibromyalgia, there was a legitimate question which the ALJ was entitled to consider as to whether Plaintiff's ability to work up until then affected either her residual functional capacity, or her credibility.

      32.  Plaintiff's work evaluations were above average, Tr. at 75-77, leading the ALJ to infer that Plaintiff's condition -- the same condition which she presently claims precludes her from working -- did not affect her ability in any way to perform her work as a substance abuse counselor.  However, the ALJ's conclusions on this issue strike me more as evidence which the ALJ found to be inconsistent with the record as a whole, rather than evidence upon which he relied in order to determine that Plaintiff was not disabled.  See 20 C.F.R. § 404.1527(c) (ALJ weighs all the evidence in arriving at a determination about disability).

      33.  In sum, I find that (1) the ALJ's finding that the diagnosis of fibromyalgia is undermined by the dearth of medical records is contrary to law in that Plaintiff's doctors recognized fibromyalgia as a condition from which she suffered; (2) the ALJ did not err when he did not accord controlling weight to the opinions of the treating physicians in that he did not give full weight to their notes stating that Plaintiff was disabled; and  (3) it was not legal error for the ALJ to consider Plaintiff's ability to work during times that she alleged to have been suffering from the impairments as evidence of non-disability.

**Recommendation**

I recommend that Plaintiff's Motion to Reverse and Remand for a Rehearing **[docket # 9]** be DENIED and that this cause of action dismissed with prejudice.  Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

_____
UNITED STATES MAGISTRATE JUDGE